JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4608 | **DATE** | 7/18/2002 |
| **CASE TITLE** | Boshnjaku vs. Federal Republic of Yugoslavia | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached order, the Court finds that it lacks subject matter jurisdiction over this case. Therefore, the Court denies plaintiffs' motion for default and their motion for summary judgment (6-1). Judgment is entered dismissing the case for lack of subject matter jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 29 2002 | |
| | Notified counsel by telephone. | | date docketed | 9 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 02 JUL 26 PM 3:28 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEXHAT BOSHNJAKU, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 01 C 4608 |
| FEDERAL REPUBLIC OF YUGOSLAVIA, et al., | ) |
| Defendants. | ) |

DOCKETED
JUL 2 9 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case, some 58 ethnic Albanian residents and former residents of the town of Gjakove, Kosova, have filed suit against the Federal Republic of Yugoslavia, the Yugoslavian Armed Forces, the Republic of Serbia, the Serbian Armed Forces, and Slobodan Milosevic, Yugoslavia's former head of state. Their claims arise from Milosevic's and Yugoslavia's execution of a policy of "ethnic cleansing" in Kosova in 1997-98. Plaintiffs claim that as a result of this policy, their property was expropriated or destroyed, and some of the plaintiffs or their family members were tortured, sexually assaulted, or killed. They seek to recover damages from the defendants.

Plaintiff Nexhat Boshnjaku is a resident of Illinois; that is the only contact between any aspect of the case and this District or State. The remaining plaintiffs are residents of the United Nations-administered region of Kosova. The governmental defendants were, plaintiffs claim, served with process pursuant to the terms of the Hague Convention. Though a Yugoslavian government representative accepted, in February 2002, the process that was directed to Milosevic, he was not personally served, and he was not a government official at the time; indeed, he was in custody awaiting extradition and trial for war crimes before this action was filed. *See* "Milosevic in Prison, Professes Innocence," 2001 WL 4058058, Chicago Tribune, Apr. 2, 2001; "Serbs Send Milosevic to UN Tribunal," 2001 WL 4088903, Chicago Tribune,

June 29, 2001.

None of the defendants have responded to the complaint. Plaintiffs filed a motion for entry of default and, following the Court's inquiry regarding the existence of subject matter jurisdiction, also filed a motion for summary judgment and a memorandum addressing the jurisdictional issue. For the reasons set forth below, the Court concludes that it lacks subject matter jurisdiction.

### Discussion

Before the Court can enter an order of default or summary judgment in favor of the plaintiffs, we must be satisfied that we have subject matter jurisdiction over this case. Under the Foreign Sovereign Immunities Act, "a foreign state shall be immune from the jurisdiction of the courts of the United States ... except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. §1604. The Yugoslavian and Serbian governments and their armed forces (assuming the latter are suable entities) are "foreign states" as that term is defined in 28 U.S.C. §1603(a). And assuming for purposes of discussion that Milosevic was properly served, he qualifies as an "agency or instrumentality of a foreign state" entitled to immunity under the FSIA, because he is being sued for actions taken in his capacity as a head of state. *See id.* §1603(b)(1); *Chuidian v. Philippine National Bank*, 912 F.2d 1095, 1099-1103 (9th Cir. 1990).

Thus under the FSIA, the defendants are all immune from jurisdiction in this country, unless an exception to the general rule of immunity applies. Plaintiffs argue that there are three exceptions that apply in this case: the waiver exception, the commercial activity exception, and an exception for violations of international law and *jus cogens* (a Latin term meaning "compelling law").

Under the waiver exception found in §1605(a)(1), a foreign state cannot claim immunity if it has waived that immunity. According to the plaintiffs, the defendants waived their immunity by signing in this country in 1995 the Dayton Peace Accords (DPA), in which the defendants agreed to, among other things, "secure to all persons within their jurisdiction the highest level of internationally recognized human rights." *See* Agreement on Initializing the General Framework

Agreement for Peace in Bosnia and Herzegovnia (attached to plaintiffs' motion for summary judgment as Exhibit B). The plaintiffs contend that they are, in essence, third party beneficiaries of the DPA, because they were within the jurisdiction of Yugoslavia at the time of the signing of the agreement. They argue that because the DPA was negotiated and initialed in the United States, and no provision was made in the agreement regarding the forum for the resolution of disputes arising out of injuries inflicted upon protected third parties, the defendants have waived their immunity and are therefore subject to jurisdiction in United States courts.

The agreement by the parties to the DPA to afford basic human rights to their inhabitants is a substantive understanding, not a conferral of jurisdiction on any nation's courts to adjudicate the parties' failure to abide by the agreement. In *Argentine Republic vs. Amerada Hess*, 488 U.S. 428 (1989), the Supreme Court held that "a foreign state cannot waive its immunity under Section 1605(a)(1) by signing an international agreement that does not mention a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States." *Id.* at 430. No such provision is found in the DPA.

Plaintiffs cite no authority that supports their argument that an international agreement's silence on the question of where disputes are to be determined implicitly confers jurisdiction on the country in which the agreement was negotiated. In *Frolova vs. Union of Soviet Socialist Republics*, 761 F.2d 370 (7th Cir. 1985), the Seventh Circuit noted that "the implicit waiver clause of Section 1605(a)(1) is narrowly construed." *Id.* at 377. The court went on to state that "courts rarely find that a nation has waived its immunity, particularly with respect to suits brought by third parties, without strong evidence that this is what the foreign state intended." *Id.* Again, there is no such evidence here.

Furthermore, acceptance of plaintiffs' argument likely would hinder our government in its efforts to mediate and resolve other countries' disputes, as foreign leaders would be reluctant to participate in meetings and make agreements in this country for fear of subjecting themselves and their governments to suit here. And if plaintiffs' reasoning were adopted, United States courts, because of their relative openness, would find themselves preoccupied with cases involving

3

human rights abuses and military conflicts from around the world. In sum, there is nothing in this country's law or in the law of nations that would permit our courts to be used as the equivalent of an international human rights tribunal for fundamentally foreign disputes like this one. "Courts have generally required convincing evidence that a treaty was intended to waive sovereign immunity before holding that a foreign state may be sued in this country," *Frolova*, 761 F.2d at 377, and no such evidence exists in this case.

Plaintiffs next rely on §1605(a)(2), which provides that a foreign state is not immune when the lawsuit is based upon an act committed outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere that causes an effect in the United States. Section 1603 states that "commercial activity carried on in the United States by a foreign state is such commercial activity having substantial contact with the United States.," and it provides that the determination of whether particular activity is commercial is to be made by reference to the nature of the course of conduct, rather than by reference to its purpose. 28 U.S.C. §1603(d)-(e).

Plaintiffs assert that the act of conducting forced expulsions in Yugoslavia caused the inflow of thousands of Kosovar refugees into the United States, causing a direct effect in the United States from which the Yugoslavian government benefitted commercially. This is insufficient to bring the case within the commercial activity exception. First, for activity to have a "direct effect" in this country within the meaning of 1605(a)(2), there must be "no intervening element[s], but rather [a flow] in a straight line without deviation or interruption." *Princz v. Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1993). Plaintiffs have failed to offer any evidence to support a finding that that is what occurred here.

Perhaps more importantly, plaintiffs' argument concerns the purpose of the defendants' activity rather than its inherent nature. This is contrary to §1603(d), which requires courts to focus on the nature of the conduct at issue. The conduct involved in this case includes killing and assaulting non-combatants, forced expulsions, and the taking and destruction of property. That is not commercial activity by any definition of the term. As the Supreme Court stated in

4

*Saudi Arabia vs. Nelson*, 507 U.S. 349 (1993), the commercial activity exception is defined narrowly; it applies only when "the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Id.* at 360-61. Similar to the present case, the claims at issue in *Saudi Arabia v. Nelson* involved abuses of government and police power, including wrongful arrest, torture and imprisonment. The Court held that these did not constitute commercial activity within the meaning of §1605(a)(2). As the Court stated, "however monstrous such abuse undoubtedly may be, a foreign state's exercise of the power of its police has long been understood ... as peculiarly sovereign in nature," *id.* at 361, and does not constitute commercial activity falling within the scope of §1605(a)(2).

Finally, plaintiffs argue that the defendants' acts constitute crimes against humanity and violations of accepted norms of international law and *jus cogens*, and that for this reason, the defendants cannot claim immunity – a waiver argument of sorts. But this argument provides no basis to avoid the immunity conferred by the FSIA. *See Princz*, 26 F.3d at 1174 (rejecting an argument that Germany's Third Reich had waived the country's sovereign immunity by violating *jus cogens* norms). Reaffirming the reluctance of the courts to find a waiver of immunity based on claimed violations of *jus cogens*, the court in *Sampson vs. Federal Republic of Germany*, 250 F. 3d 1145 (7th Cir. 2001), stated that "although international law is 'part of our law,' it does not follow that federal statutes must be read to reflect the norms of international law." *Id.* at 1152-53. The court went on to state that "the potential scope of a customary international law exception to foreign sovereign immunity, even in the *jus cogens* context, would allow for a major, open-ended expansion of our jurisdiction into an area with substantial impact on the United States 'foreign relations,'" and it therefore declined to recognize such an exception. *Id.* at 1156. In short, the fact that plaintiffs' claims concern violations of international law does not permit plaintiffs to avoid the immunity conferred on defendants by the FSIA.

## Conclusion

For the reasons stated above, the Court finds that it lacks subject matter jurisdiction over

this case. We therefore deny plaintiffs' motion for default and their motion for summary judgment [docket item 6-1]. The Clerk is directed to enter judgment dismissing the case for lack of subject matter jurisdiction.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 18, 2002